NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No.: 2:17-cr-00094 |
| Plaintiff, | |
| v. | **OPINION** |
| JASON THOMPSON, | |
| Defendant. | |

**CECCHI, District Judge.**

Defendant Jason Thompson ("Defendant") has been charged with a four-count indictment for (1) conspiracy to commit Hobbs Act robbery, (2) attempted Hobbs Act robbery, (3) brandishing a firearm during a crime of violence, and (4) possession of a firearm by a convicted felon. Presently before the Court is Defendant's amended superseding omnibus motion and the Government's motions *in limine*. (ECF Nos. 64, 70).[1] Having considered all of the submissions filed in connection with these motions, and having heard oral argument concerning the motions on October 18, 2018 and November 7, 2018, the Court makes the following determinations with respect to the motions.

---

[1] The Court provided its ruling as to Defendant's motion to dismiss counts one, two, and three of the indictment for lack of subject matter jurisdiction on the record at an oral argument held before the Court on December 17, 2018. (ECF No. 86); *see also* (ECF No. 64 at 26). This opinion addresses all remaining issues from Defendant's omnibus motion.

## I.     BACKGROUND[2]

On or about the morning of August 12, 2015, Defendant, co-conspirator Clemente Carlos, and a third, unidentified individual approached an apartment building in Paterson, New Jersey, with a flashing police light visible from their vehicle's windshield. Defendant and Carlos, neither of whom was employed by law enforcement agencies, dressed as police officers with holsters on their waists that contained firearms. Defendant carried a black firearm, and Carlos carried a silver firearm. A woman emerged from the building with her one-year-old child, and Carlos approached the woman to tell her that he and Defendant were looking for someone and provided a picture of a male individual. He then told the woman that he and Defendant needed to search the woman's apartment, at which point Defendant approached the woman and took her apartment keys. Defendant then used the keys to enter the building, and the woman with her child, led by Carlos, followed.

When they entered the apartment, the woman told Defendant and Carlos that her brother was asleep in one of the bedrooms. Defendant and Carlos forced open the door and Defendant removed the gun from his holster and pointed it at the woman's brother. Defendant directed the man at gunpoint into the living room and ordered him to kneel on the floor, where the woman joined soon thereafter. Defendant and Carlos ordered the woman and her brother to look down and not at their faces. Defendant then restrained the man's hands behind his back using a white zip tie.

---

[2]     The facts included are a summary of what the Government has provided as a statement of facts. *See* (ECF No. 67 at 1-5). Defendant's motion uses the facts "[a]ccording to the Government" without providing a separate statement, so for purposes of the issues addressed in this motion, the Court will reference the facts as alleged by the Government. *See* (ECF No. 64 at 2-5.)

Defendant and Carlos searched the apartment, during which either Defendant or Carlos broke open the back of a wooden dresser in the woman's bedroom. At one point, Carlos asked the woman if the furniture in the apartment was new, to which the woman responded affirmatively and explained that the previous occupants—the woman's aunt and uncle—had moved out of the apartment approximately two weeks beforehand. Carlos asked the woman where they could locate her aunt, and the woman responded that she did not know. A short while later, Defendant and Carlos collected the zip ties they had used to bind the man's hands and left the apartment.

Throughout the course of the subsequent investigation, authorities learned that the woman's aunt and uncle had lived in the apartment for twenty-five years and that they had moved out approximately eleven days before the attempted home invasion robbery. The woman's aunt and uncle own a Paterson-based business known as JQ National Distributors, which supplies convenience stores, restaurants, and liquor stores in the Passaic County, New Jersey area with a variety of products. JQ National Distributors maintains a large warehouse in Paterson where it stores the products it supplies, and companies outside of New Jersey manufacture some of these products. One vendor that the company used to supply its products, Sultana Distribution Services, Inc., is located in New York.

Defendant made several post-arrest statements to authorities, where he noted that Carlos had received information that a "business person" was storing one million dollars in cash inside a hidden compartment in a dresser at the apartment, and it was Defendant's belief that the intended victim was evading taxes. Defendant and Carlos left the apartment when they realized that the intended victims were not present. A summary of a subsequent unrecorded conversation with Defendant stated that the intended victim was the owner of a factory in Paterson called "JQ."

The investigation also led to a warrant to search Defendant's residence, where law enforcement officers recovered a silver handgun from Defendant's bedroom that was loaded with five rounds of ammunition.

## II.    DEFENDANT'S OMNIBUS MOTION

Defendant filed his amended brief in support of his superseding omnibus motion on April 29, 2018. (ECF No. 64). The Government filed an opposition on May 24, 2018, (ECF No. 67) and Defendant filed a reply on May 31, 2018. (ECF No. 68). Defendant raises eight issues in his omnibus motion, which the Court will address below.[3]

### A.    Constitutionality of Photo Array

### 1. Photo Array Suppression

An out-of-court photographic identification procedure violates a defendant's constitutional right to due process when it is (1) "so [unnecessarily] suggestive" that it (2) creates "a very substantial likelihood of . . . misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991). Under this two-step approach, where a photo array is unnecessarily suggestive, suppression is not an inevitable consequence. "[I]f the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012); *see also Manson v. Brathwaite,* 432 U.S. 98, 116 (1977) ("[E]vidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."). Unless the evidence is "so extremely unfair that its admission violates fundamental

---

[3]    The Court has consolidated issues for efficiency where appropriate.

conceptions of justice," no due process violation occurs by admitting the evidence and allowing the jury to weigh the credibility of competing witnesses. *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted); *see also Perry*, 565 U.S. at 237 ("The Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit.").

The Court finds that the photo array and identification procedure from which Defendant was identified by the female robbery victim ("Victim 1") was not "unnecessarily suggestive." The Court reviewed the photo array, video footage of the identification, and a transcript of the identification. The Court then held a hearing on October 18, 2018 in which the individual who conducted the photo array identification procedure, Detective Sergeant Ralph Garcia, testified and was cross-examined by Defendant (the "suppression hearing").

At the suppression hearing, Detective Sergeant Garcia testified that he had not conducted a photo array prior to the one at issue and that he was chosen because he "was the only officer available at the time" that was bilingual and not involved in the investigation. Suppression Hr'g Tr. at 20:13-14 (Oct. 18, 2018). He further testified that he did not know Defendant was a suspect at the time he conducted the photo array and therefore did not know that Defendant's photo was the seventh and final photograph in the array. Suppression Hr'g Tr. at 19:24-20:10; 23:20-25:11 (Oct. 18, 2018). The video of the identification procedure shows Detective Sergeant Garcia explain the instructions to Victim 1 in English and Spanish.[4] The photo array contained seven photographs, and Detective Sergeant Garcia displayed them to Victim 1, one at a time. His voice,

---

[4]     Defendant has not argued any issue with respect to the standard instruction form for photo identification procedures.

movements, and mannerisms remained essentially the same throughout the process. While conducting the photo array, Detective Sergeant Garcia initially stated that Victim 1 would view six photographs when there were actually seven photographs.[5] Prior to showing the sixth photograph, he remarked that it appeared there were more than six photographs. He then cleared his throat directly after Victim 1 stated that she did not recognize the individual in the sixth photograph, prior to showing her the seventh photograph.

As Detective Sergeant Garcia was displaying each photograph to Victim 1, he did not state the alphabetical label of each photograph, and when Victim 1 identified the seventh and last photograph, which was of Defendant, Detective Sergeant Garcia failed to state the alphabetic label of that photo and did not circle the corresponding letter on the photo array form. Each individual photograph shown by Detective Sergeant Garcia is not clearly visible in the video of the photo array. However, in the video each time he shows a photograph to Victim 1, Detective Sergeant Garcia then places the photograph in a face-up position on the table to his right. When Victim 1 identified the photograph of Defendant, which was marked letter E, Detective Sergeant Garcia instructed her to sign the back of the photograph and include the date and time underneath, which she did. In the video of the procedure, Detective Sergeant Garcia's head covers the photograph that Victim 1 is signing, however the Government produced a copy of the photograph and of the

---

[5]     The Court notes that the standard photographic array identification form used here contained a portion for the administrator to list out each photograph in the order shown. That form contains six slots in which to write in the photo letter, numbered one through six. The seventh letter was written in below the space provided. (ECF No. 63-2, Def's Ex. C at Da19).

signed back of the photograph to Defendant.[6]

Defendant further argued that Defendant was "dark skinned" (ECF No. 64 at 17-18) and that he was "the ONLY dark toned individual among six brown tone filler photos," which added another element of suggestiveness. (ECF No. 68 at 4). During the suppression hearing, Detective Sergeant Garcia was shown all of the photographs used in the array and asked which of the photographs "depicts the most dark-skinned male," to which he responded that the photograph with letter "B," which was not of Defendant, displayed the darkest skin tone. Suppression Hr'g at 123:17-23 (Oct. 18, 2018).

While the Court finds that Detective Sergeant Garcia may have deviated in some respects from the standard photo identification procedure protocol, those deviations on balance did not rise to the level of unnecessary suggestiveness. Courts have long recognized that "even though the identification procedure employed may have in some respects fallen short of the ideal," that a correct identification can still be made. *Simmons*, 390 U.S. at 385-86. Detective Sergeant Garcia was not aware that the Defendant's photograph was the last one in the array and he stated that there were more than six photographs prior to Victim 1 viewing the sixth photograph. While Detective Sergeant Garcia failed to read the alphabetic letters of each photograph, he followed the same procedure for all photographs and therefore did not create any suggestion as to Defendant's photograph. Detective Sergeant Garcia's tone of voice and mannerisms remained generally

---

[6] The Court reviewed the photographs from the lineup and finds that the picture of Defendant, marked with a letter E in the top left-hand corner, clearly shows Victim 1's signature on the back, next to the date and time of the identification. Defendant's omnibus motion notes, however, that the copies provided to Defendant of the signed photograph reflect the signature in several places (ECF No. 64 at 20-21). Defendant again raised the issue at the suppression hearing and noted that the letter "E" appeared to be "superimposed" with the signatures. *See* Suppression Hr'g Tr. at 29:11-37:16 (Oct. 18, 2018). The Court is satisfied that photocopying the front of the photograph and the signed back of the photograph in an attempt to include them on the same page caused what appeared to be the bleed-through of the letter "E," to look like an inverted "3" on some copies based on the placement of the images.

consistent throughout the photo array and the way in which he cleared his throat prior to providing the seventh and final photograph to Victim 1 was not done in such a manner to suggest that the photograph was of the perpetrator. Lastly, for our determination at this stage, Defendant's skin tone does not set him apart from the skin tone of others depicted in the photo array to such a degree that Defendant's photograph is suggestive. Therefore, the Court finds that Defendant has not sufficiently demonstrated that the photo array was unnecessarily suggestive.

Because the Court finds that the photo array was not unnecessarily suggestive, it need not address whether there was a substantial risk of misidentification from the photo array. *See United States v. Sebetich*, 776 F.2d 412, 418 (3d Cir. 1985). Nonetheless, the Court will do so. "[A] degree of suggestiveness does not in itself require exclusion of the evidence." *United States v. Dowling*, 855 F.2d 114, 117 (3d Cir. 1988), *aff'd*, 493 U.S. 342 (1990). An identification from an unnecessarily suggestive photo array need be suppressed only if, under the totality of the circumstances, there is a very substantial likelihood that the defendant was misidentified. *See United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995); *Neil v. Biggers*, 409 U.S. 188, 199 (1972). The factors considered to evaluate the likelihood of misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

The Court finds that even if the photo array was unnecessarily suggestive, Defendant has not sufficiently shown that there is substantial risk that the identification of Defendant was unreliable. The perpetrator did not wear a mask or any other facial covering that would significantly conceal his face. Victim 1 had adequate opportunity to observe the perpetrator over

8

an approximately twenty-seven-minute period as he approached her car, spoke with her, took her apartment keys, and entered her apartment, after which he came within close proximity to her and ordered her to kneel on the floor. During the time of the attempted robbery, Victim 1 was engaged directly with the perpetrator. After identifying Defendant's photograph as depicting the perpetrator, Victim 1 initially indicated her level of certainty as one-hundred percent, and then changed her answer to ninety percent "just in case." (ECF No. 63-2, Def's Ex. B at Da 15). While Defendant points out that Detective Sergeant Garcia asked Victim 1 to state the percentage of her confidence in identifying the correct individual and then stated "one hundred percent? seventy?" rather than requesting a general confidence percentage without providing a number, Victim 1 did not hesitate in stating that the last picture identified the perpetrator and did not even choose the lowest confidence level offered by Detective Sergeant Garcia. (ECF No. 63-2, Def's Ex. B at Da14-15). The identification took place less than three months after the attempted robbery. Based on these facts, the Court finds that Defendant has not sufficiently proven a substantial risk that the identification of Defendant was unreliable.

## 2. Suppression of Defendant's Statements, Arrest, and Gun Evidence

The Court finds that Victim 1's photographic identification of Defendant did not violate his Fourth Amendment rights and therefore sufficient probable cause existed to issue search warrants for Defendant's person and home. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As such, the Fourth Amendment generally requires that law enforcement obtain a warrant based on probable cause to justify a search and seizure. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). Because the search warrants were properly issued, evidence obtained

as a result of executing the search warrants, namely Defendant's post-arrest statement, gun, and the contents of Defendant's cell phone, should not be suppressed.

The Court notes, however, that even if the photographic identification of Defendant by Victim 1 was removed from the probable cause affidavit, sufficient information from which to establish probable cause existed in the affidavit. Probable cause is a "practical question," which the Courts analyze under a "totality-of-the-circumstances approach." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Where a search was conducted pursuant to a warrant, "the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236 (internal citation omitted). In determining whether probable cause exists, the issuing magistrate is required to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 238).

Defendant contends that "there is no evidence identifying Defendant as the actual perpetrator except for the identification of Defendant by Victim-1." (ECF No. 64 at 24). The probable cause affidavit, however, does not require Victim 1's identification to establish probable cause. On the date of the attempted robbery, August 12, 2015, Victim 1 and her husband provided a statement to police describing the two men who entered their home, and stated that they both were dressed in black shirts with "Sheriff" displayed on the back, and both of them carried a handgun. (ECF No. 63-2, Def's Ex. H at Da51-52). Both perpetrators were captured on surveillance video footage from the residence where the crime took place and are wearing the same outfit described by Victim 1 and her husband. The owner of the vehicle used in the commission

of the crime identified Defendant by Defendant's alias as the individual on the surveillance footage and brought detectives to the location of Defendant's home. (ECF No. 63-2, Def's Ex. H at Da61). From the identification of Defendant's vehicle in his driveway, detectives were able to determine Defendant's legal name. On August 31, 2015, prior to Victim 1's identification of Defendant on November 4, 2015, Detective Chinere Mills from the Passaic County Sheriff's Warrant Division reviewed the surveillance video footage and recognized one of the individuals to be Defendant. (ECF No. 63-2, Def's Ex. H at Da63). In her report, Detective Mills noted that she has known Defendant for more than 15 years. Taken together, these two identifications serve to establish probable cause and the warrant's validity even without the inclusion of Victim 1's identification.

### B. Reserved Immunity

Defendant's motion to dismiss Count Four of the indictment is denied. Count Four of the indictment, for possession of a firearm by a convicted felon, alleges a violation of 18 U.S.C. § 922 (g)(1), stating that Defendant "did knowingly possess in and affecting commerce a firearm, namely, a Rossi, model M88, .38 caliber handgun, bearing serial number W243606, which was loaded with five (5) rounds of ammunition." (ECF No. 63-2, Ex. M at Da154). The handgun was recovered during a search of Defendant's residence, from a wardrobe in Defendant's bedroom. (ECF No. 64 at 9-10).

The federal statute at issue states in pertinent part, that "[i]t shall be unlawful for any person who has been convicted . . . of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922 (g)(1). While the federal government has the authority under the Commerce Clause to regulate activities impacting interstate commerce, the States retain a general police power to enact legislation aimed at more local activities. *United States v. Lopez*, 514 U.S. 549, 567 (1995). 18 U.S.C. § 922 (g)(1)

"addresses items sent in interstate commerce and the channels of commerce themselves, delineating that the latter be kept clear of firearms," and accordingly Congress has proper authority to enact the legislation under its Commerce Clause power. *United States v. Singletary*, 268 F.3d 196, 204-05 (3d Cir. 2001).

Defendant, citing the Tenth Amendment, puts forth an argument that "the moment a State passes a law protecting or empowering its residents—if that law allows the State's resident to engage [in] acts or omissions which conflict with or [are] prohibited by Federal law—the Federal government is powerless to move against that resident without first successfully challenging the State law in a Court of competent jurisdiction." (ECF No. 64 at 33). The Tenth Amendment states that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. Specifically, Defendant claims that in cases where the Federal Government criminalizes activity that a state government has expressly protected, sovereign immunity that would be conferred on the State is passed to the individual as a "reserved immunity" under which the individual cannot be prosecuted until the Federal Government successfully challenges the conflicting state law. *See* (ECF No. 64 at 33-34).

In support of his theory of reserved immunity, Defendant cites to New Jersey statute N.J.S. 2C:39-6(e) that he believes exempts state residents, and therefore Defendant, from prosecution "when illegally possessing a handgun in their homes." (ECF No. 64 at 38). "New Jersey's gun-control laws [are] a careful grid of regulatory provisions" which "draw careful lines between permission to possess a gun in one's home . . . and permission to carry a gun." *In re Preis*, 573 A.2d 148, 150 (N.J. 1990) (internal citations omitted). N.J.S. 2C:39-5(b) makes it unlawful for

"[a]ny person" to knowingly possess "any handgun . . . without first having obtained a permit to carry the same" and makes such violation "a crime of the second degree." N.J.S. 2C:39-5(b).

While the general rule broadly criminalizes knowing possession of a handgun without a permit, "the scope of that prohibition . . . is greatly diminished by numerous statutory exceptions." *In re Wheeler*, 81 A.3d 728, 737 (N.J. Super. Ct. App. Div. 2013). One such exception is in the next section of the same chapter, N.J.S. 2C:39-6(e), which states in pertinent part that the general prohibition against carrying a handgun without a permit should not be construed to "prevent a person keeping or carrying about his . . . residence . . . any firearm." N.J.S. 2C:39-6(e). The New Jersey Supreme Court has found that "[a]ccording to its plain language, the exemption applies to a gun carried . . . about a residence." *Morillo v. Torres*, 117 A.3d 1206, 1216 (N.J. 2015).

Defendant and the Government both point to two statutes which deal with prior convictions, N.J.S. 2C:39-5(j) and N.J.S. 2C:39-7(b), to inform our discussion of how prior felony convictions impact the residence exemption. N.J.S. 2C:39-5(j) applies to the specific prior convictions enumerated, none of which are Defendant's prior convictions.[7] Because the statute is inapplicable to Defendant, the Court need not analyze how N.J.S. 2C:39-5(j) interacts with the residence exemption statute at N.J.S. 2C: 39-6(e).

N.J.S. 2C:39-7(b), however, categorically defines "[c]ertain persons not to have weapons," and specifically applies to Defendant. N.J.S. 2C:39-7(b)(1) states that "a person having been convicted of a crime pursuant to the provisions of . . . 2C:35-7 [possession of a controlled

---

[7] N.J.S. 2C:39-5(j) makes possessing a handgun without a permit (typically a second-degree crime under N.J.S. 2C:39-5(b)) a "first degree crime" for "a person who has a prior conviction of any of the crimes enumerated in subsection d. of section 2 of P.L. 1997, c. 117 (2C:43-7.2)." The referenced subsection lists twenty different crimes by name and statute number. None of them are for possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property (N.J.S. 2C:35-7) or for unlawful possession of a weapon (N.J.S. 2C:39-5(b)), which are Defendant's prior convictions.

dangerous substance within 1,000 feet of school property] . . . who purchases, owns, possesses or controls a firearm is guilty of a crime of the second degree and upon conviction thereof, the person shall be sentenced to a term of imprisonment . . . which shall be fixed at five years." Defendant has convictions from July 2003 and May 2005 for possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property, a violation of N.J.S. 2C:35-7, and therefore is considered a person not to have a weapon under the statute.

The Court finds that N.J.S. 2C:39-6(e) does not permit individuals, who would otherwise be considered "persons not to have weapons" or "certain persons" pursuant to N.J.S. 2C:39-7(b)(1), to possess handguns in their residence. As a categorical prohibition against weapons possession without exception, N.J.S. 2C:39-7(b)(1) is intended to prevent such individuals from availing themselves of the types of exemptions otherwise permitted under N.J.S. 2C:39-6. In support of this reading of the statute, "certain persons" convictions have been upheld in New Jersey state courts when the firearm was discovered, as it was here, in a defendant's home while local authorities were executing a search warrant. *See, e.g., State v. Jackson*, No. A-1677-16T3, 2018 WL 3352966, at *1 (N.J. Super. Ct. App. Div. July 10, 2018) (upholding a "certain persons" conviction where detectives executed a search warrant of defendant's home and recovered a loaded pistol). In *State v. Harrison*, the defendant was indicted on a "second-degree certain persons not to possess a firearm" offense under N.J.S. 2C:39-7(b)(1) as a result of a firearm recovered from his residence where his prior conviction was for possession of a controlled dangerous substance ("CDS") with intent to distribute within 1,000 feet of a school zone pursuant to N.J.S. 2C:35-7(a), the same prior offense as that of the Defendant. *State v. Harrison*, No. A-2870-16T4, 2018 WL 3150028, at *1 (N.J. Super. Ct. App. Div. June 28, 2018). While the certain persons indictment was dismissed in that case following the defendant's plea to one of the other charges in the

indictment, the case sufficiently demonstrates that at the state level, authorities understand the certain persons statute to prevent those individuals who have prior convictions, as enumerated in the statute, from possessing a gun in their residence. The case further demonstrates that Defendant's prior conviction is understood to subject him to the certain persons restriction.

The Court therefore finds that no conflict with federal statute 18 U.S.C. § 922 (g)(1) exists. Because no conflict exists, the Court need not perform a "reserved immunity" analysis as set out by Defendant or opine on the merits of Defendant's legal theory. Accordingly, Defendant's request is denied.

### C. Grand Jury Transcript

The Court finds that Defendant has not made a sufficient showing of his entitlement to the Grand Jury transcripts. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) permits the Court to authorize disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Well-established caselaw, however, recognizes the need for secrecy in grand jury proceedings and courts have been reluctant to "lift . . . the veil of secrecy from the grand jury." *Douglas Oil Co. v. Petrols Stops Nw.*, 441 U.S. 211, 219 (1979). The Supreme Court has held that "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* at 222. In order for the Court to grant disclosure of the transcripts, "a party must show a particularized need for that information which outweighs the public interest in secrecy." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). In providing such a

particularized need, "mere speculation that such improprieties may have occurred will not suffice to support the required showing." *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972).

Here, the Defendant has shown no such particularized need which would outweigh the high burden required to overcome the secrecy of the grand jury. Defendant's arguments are based on the nature and sufficiency of evidence presented to the grand jury, particularly that Defendant believes the indictment is based on misinformation about the photographic line-up identification procedures and the interstate commerce element of the Hobbs Act. *See* (ECF No. 64 at 42-44). The underlying concerns for both of these issues were additionally brought before this Court in prior sections of Defendant's omnibus motion. *See generally* (ECF No. 64 at 15-32). The Court herein denied Defendant's motion to suppress the photographic identification, *see supra* part IIA, and previously denied Defendant's motion to dismiss the indictment for lack of subject-matter jurisdiction. *See* (ECF No. 90, Motion to Exclude Hr'g Tr. at 78:18-81:3 (Dec. 17, 2018)). Defendant has not alleged any procedural issues or particularized concerns that would otherwise lead to injustice if the transcripts are not disclosed. Defendant will have the opportunity to provide defenses with regard to his arguments at trial and therefore is not prejudiced at this stage without having the transcripts. Accordingly, Defendant's request is denied.

### D. Discovery

Defendant raised several discovery requests in his motion. (ECF No. 64 at 45-52). At oral argument, Defendant stated that the discovery issues had been resolved. Oral Argument Tr. at 93:4-24 (Nov. 7, 2018). Defendant claimed that the only outstanding discovery request was for statements required to be produced pursuant to the Jencks Act, U.S.C. § 3500(a), however Defendant acknowledged that his request for the statements was premature as he was not yet entitled to the material. Oral Argument Tr. at 92:18-93:3 (Nov. 7, 2018). The Government stated

that much of the Jencks Act material had been produced in advance as a courtesy, however in their opposition to Defendant's motion, they agreed to voluntarily produce the remaining material "at least three days prior to the testimony of each government witness." Oral Argument Tr. at 93:2-3 (Nov. 7, 2018); (ECF No. 67 at 58).

With respect to exculpatory evidence, the government has acknowledged its duty to produce such material pursuant to the Supreme Court's ruling in *Brady v. Maryland*, 373 U.S. 83 (1963) and claims it has complied with such obligations and will continue to do so. (ECF No. 67 at 54-55). With regard to *Giglio* material, the Government has likewise acknowledged its obligation to produce such evidence and has proposed disclosing all such material "at least seven days before trial." (ECF No. 67 at 56). It therefore appears that no additional order from the Court is required on discovery in this matter as the parties have resolved any outstanding issues and Defendant's motion for discovery is denied as moot. The parties may raise any of these issues again as necessary should further disputes arise.

### E. Pre-Trial Disclosure of 404(b) Material

Defendant seeks to compel pre-trial production of any evidence the Government intends to present at trial in accordance with Federal Rule of Evidence 404(b). (ECF No. 64 at 53). The Government has acknowledged its duty to produce such material (ECF No. 53 at 33 & ECF No. 67 at 61), and filed its motions *in limine* with such material on October 6, 2017 and again on September 11, 2018. (ECF Nos. 54 &70). Although it appears no additional order from this Court is required on this issue, for the sake of completeness, Defendant's motion for the disclosure of Rule 404(b) material is denied as moot. To the extent any issues remain, the parties may bring them before the Court.

### F. Additional Motions

Defendant seeks permission of the Court to make additional pre-trial motions as required. (ECF No. 64 at 56). The Government has not objected. Defendant's motion to file additional motions is granted.

## III.   GOVERNMENT'S MOTIONS *IN LIMINE*

The Government filed its motions *in limine* on September 11, 2018. (ECF No. 70). Defendant filed an opposition on October 3, 2018, (ECF No. 72) and the Government filed a reply on October 10, 2018. (ECF No. 74).

### A. Legal Standard

A motion *in limine* is "designed to narrow evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). The purpose of a motion *in limine* is to bar irrelevant, inadmissible, and prejudicial issues from being introduced at trial, thus narrowing the evidentiary issues. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). However, "[t]he Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact." *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 780 (3d Cir. 1996) (internal quotation marks omitted).

### B. Cross-Examination of Defendant on Prior Convictions

The Government seeks to use two prior convictions to impeach Defendant's testimony pursuant to Federal Rule of Evidence 609(a)(1)(B). Specifically, the Government seeks to introduce Defendant's July 2003 and May 2005 convictions for possession of CDS with intent to distribute within 1,000 feet of school property under N.J.S. 2C:35-7. (ECF No. 70 at 9-10).

The Third Circuit has established four factors for district courts to consider in balancing the probative value of a prior conviction against its prejudicial impact for purposes of Rule

609(a)(1)(B): (1) the nature of the crime, (2) when the conviction occurred, (3) the importance of the defendant's testimony, and (4) the degree to which the defendant's credibility is central to the case. *Gov't of V.I. v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982). While the rule generally favors prior conviction evidence to be presented for impeachment purposes if the Defendant testifies, Federal Rule of Evidence 609(b) outlines a limitation on using such prior conviction evidence after ten years. The Government concedes that "these convictions fall outside the ten-year look-back period under Rule 609(b)," however argues that nonetheless the convictions should be admissible. (ECF No. 70 at 9-10 & n.7).

"Under Rule 609(b), evidence of a conviction is inadmissible to impeach a witness if it is more than ten years old, unless the court decides that its probative value 'substantially outweighs' its prejudicial effect." *United States v. Rahmaan*, 372 F. App'x 337, 339 (3d Cir. 2010). "The Advisory Committee Notes for Rule 609(b) emphasize that 'convictions over 10 years old will be admitted *very rarely* and *only in exceptional circumstances*.'" *United States v. Shannon*, 766 F.3d 346, 352 n.9 (3d Cir. 2014) (citing Fed. R. Evid. 609(b) advisory committee's note).

Here, despite the Government's contentions, the Court does not find that the probative value of Defendant's prior convictions substantially outweighs their prejudicial effect. Although the Court recognizes that "[c]ourts have remarked on the value of using prior drug distribution convictions for impeachment purposes," (ECF No. 70 at 10), the age of Defendant's two drug-related convictions weighs heavily against admissibility. *United States v. Davis*, No. 07-909, 2012 WL 194094, at *4 (D.N.J. Jan. 23, 2012), *aff'd*, 524 F. App'x 835 (3d Cir. 2013) ("[Defendant] was properly precluded from cross-examining [his friend] about the crime because the probative value of an at least 13-year-old drug charge does not substantially outweigh its prejudicial effect.").

In their motions and at oral argument, the Government cited to several cases to support the idea that drug convictions are admissible for impeachment purposes because they speak to credibility. (ECF No. 70 at 12-13); Oral Argument Tr. at 147:25-148:16 (Nov. 7, 2018). Those cases cited by the Government, however, were all within the ten-year look-back period. *Id.* By contrast, the Government also cited cases beyond the ten-year-period to argue that staleness is a lesser concern when credibility of the defendant is at issue. However, those cases involved prior convictions that speak much more directly to propensity for truthfulness than prior drug convictions under normal circumstances. Moreover, those cases had additional circumstances that weighed more heavily on the factors of the importance of defendant's testimony and credibility. *See, e.g., United States v. Slade*, Crim. A. No. 12-0367, 2013 WL 5873576, at *5 (E.D. Pa. Nov. 1, 2013) (allowing in prior conviction for access device fraud, where element of fraud "involves some element of deceit" and defendant had taken other actions with regard to that conviction which were "further evidence of dishonesty"); *United States v. Pritchard*, 973 F.2d 905, 909 (11th Cir. 1992) (allowing in defendant's prior burglary conviction where the only other evidence was testimony, his credibility was "[t]he crux of th[e] case," and the conviction "took on special significance," yet nevertheless excluding defendant's prior narcotics conviction); *see also* (ECF No. 70 at 12); Oral Argument Tr. at 149:19-150:8; 157:17-160:20 (Nov. 7, 2018).

The Government has not provided any such extraordinary circumstances that would overcome Rule 608(b) limitations in this case.[8] Furthermore, the factors of the importance of Defendant's testimony and credibility do not overcome the limitations in Rule 608(b) because the

---

[8] The Government points out that the trial in this matter was originally scheduled for November 21, 2017, at which point the convictions would have been ten years and six months old. The Court still finds that both convictions fit firmly outside of the look-back period and, for the reasons stated, the Court is not persuaded that the probative value of the convictions significantly outweigh their prejudicial effect.

Government has other direct and circumstantial evidence against Defendant, including a lengthy confession. As such, if Defendant chooses to testify at trial, the Government is precluded from introducing his two prior convictions for the purposes of impeachment.

### C. Defendant's Statements Regarding His Purported Co-Conspirator's Involvement in a Previous Shooting

The Government seeks to introduce statements Defendant made about his purported co-conspirator's alleged involvement in a prior shooting, in which Defendant was not involved. Defendant told investigators that his co-conspirator allegedly "shot somebody" and that the individual shot was "somebody that was with" his co-conspirator, which Defendant found to be "a little scary." (ECF No. 70 at 14). Defendant also made other statements indicating that Defendant was afraid of his co-conspirator and had feared for his safety if he were to identify his co-conspirator to authorities. *Id.* The Government seeks to introduce these statements as direct evidence, or in the alternative, as evidence pursuant to Federal Rule of Evidence 404(b).

### 1. As Direct Evidence

As a preliminary matter, the Court notes that Defendant's statements are not hearsay, as such statements were made by Defendant and are being offered against Defendant by the Government. *See* Fed. R. Evid. 801(d)(2). Further, under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "As [the Third Circuit] ha[s] recognized, this standard is 'not high.'" *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007). "[O]nce the threshold of logical relevancy is satisfied[,] the matter is largely within the discretion of the trial court." *United States v. Steele*, 685 F.2d 793, 808 (3d Cir. 1982). The disputed evidence, which indicates that Defendant had knowledge of his purported co-conspirator's involvement in a previous shooting and was fearful of his co-

conspirator, makes more probable "that actual or threatened force, or violence, or fear of injury was used during the commission of the offense." (ECF No. 67 at 14). As such, this evidence is relevant. *See Kemp*, 500 F.3d at 295; *Steele*, 685 F.2d at 808.

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'The judge has discretion to exclude the evidence only if the potential harms "substantially" outweigh the probative value of the evidence.'" *United States v. Jafari*, No. 12-475, 2015 WL 4744375, at *7 (D.N.J. Aug. 10, 2015) (citations omitted), *aff'd* 648 F. App'x 226, 229-30 (3d Cir. 2016). "[E]ven if the judge finds the balance favors exclusion, this does not mean that he *must* exclude the evidence; rather he has discretion to exclude it—a discretion that may be used to admit it." *Id.* (citations omitted). "The trial judge's discretion to admit evidence is construed 'especially broadly in the context of Rule 403.'" *Id.* (citations omitted).

Here, the Court does not find that the potential prejudice of Defendant's statements substantially outweighs their probative value. Such statements, which indicate that Defendant had knowledge of his purported co-conspirator's involvement in a previous shooting and was fearful of his co-conspirator, are highly probative of the fact that actual or threatened force, or violence, or fear of injury could have resulted during the commission of the offense. Defendant's statements make it more likely that Defendant may have carried a gun during the attempted robbery, at a minimum for self-defense purposes. In context of other evidence presented by the Government to show that Defendant used a gun, the statements make that fact, which is one of consequence, more probable.

However, the Court finds that there shall be an instruction to the jury that Defendant had no involvement in his purported co-conspirator's previous shooting. Instructions to the jury to limit the prejudicial impact of the statement will ensure that the potential prejudice of Defendant's statements do not outweigh their probative value. *See United States v. Ramos*, 971 F. Supp. 186, 194-95 (E.D. Pa. 1997), *aff'd*, 151 F.3d 1027 (3d Cir. 1998) (finding that where the Government explained to the jury that a Defendant "had absolutely nothing to do with" the incident being described and there was "substantial independent evidence" of Defendant's guilt for the crime at issue, that the probative value of "the detailed violent acts" described to the jury was not substantially outweighed by unfair prejudice). Defendant's statements are therefore admissible as direct evidence, so long as a proper jury instruction accompanies the introduction of evidence.

### 2. As Rule 404(b) Evidence

The Government alternatively seeks to admit Defendant's statements for a proper purpose under Federal Rule of Evidence 404(b). (ECF No. 70 at 15-16). Federal Rule of Evidence 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Although the Government makes this alternative application, it appears to concede that "this is not an act involving [Defendant], and thus not 404(b) evidence." (ECF No. 70 at at 17). The Court agrees. When "the testimony challenged [does] not directly involve [a defendant], but rather involve[s] the activities of [a defendant's] co-conspirators . . . the issue is most appropriately addressed not under Rule 404(b) but within the rubric of Rule 403." *Ramos*, 971 F. Supp. at 190.

As such, because the Court has already evaluated the admissibility of Defendant's statements under Rules 401 and 403, and determined that Defendant's statements are admissible direct evidence, the Government's motion to admit such statements under Rule 404(b) is denied as moot.

### D. Impeachment of Defendant Under Federal Rule of Evidence 608

#### 1. Defendant's Statements

If Defendant testifies, the Government seeks to introduce as impeachment evidence, pursuant to Federal Rule of Evidence 608(b)(1), Defendant's statements about a safe and ammunition recovered from his property, as well as contradictory statements regarding information about his co-conspirator's involvement in other robberies. In particular, the Government would like to introduce Defendant's statements that his brother found the safe, which contained pry marks, in the garbage and uses it to "work out" and that someone "tossed dope and . . . tossed the bag with bullets" into Defendant's backyard. (ECF No. 70 at 19); (ECF No. 54-2 at 15). The Government would also like to introduce Defendant's statement that he did not know about his co-conspirator's involvement in other robberies, in order to show a contradiction with Defendant's subsequent statement admitting that his co-conspirator "may have been talking about doing a job . . . [t]hey were talking about a guy who sold drugs." (ECF No. 70 at 20 & ECF No. 54-2 at 26).

Federal Rule of Evidence 608(b)(1) states that:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness[.]

Fed. R. Evid. 608(b)(1). "Federal Rule of Evidence 608(b)(1) gives the trial court discretion to permit cross-examination of a witness regarding specific instances of conduct concerning the witness's character for truthfulness or untruthfulness." *United States v. Wilson*, No. 15-94, 2016

24

WL 2996900, at *4 (D.N.J. May 23, 2016). "The Court's inquiry under Rule 608(b) is guided by the analysis required by Rule 403. Thus, the Court must determine whether 'questions on cross-examination relating to the prior conduct of the witness are probative of truthfulness or untruthfulness and whether the probative value is outweighed by the prejudicial effect.'" *United States v. Rashid*, No. 08-00493, 2011 WL 13196524, at *1 n.2 (E.D. Pa. June 27, 2011).

The Court will not permit inquiry into Defendant's statements about the ammunition or broken safe. Although "the Government has provided the Court with documents in support of its intention to cross-examine [Defendant] on these topics, the evidence provided does not constitute 'factual support for its inquiries' and does not establish 'a good-faith basis for its questions.'" *United States v. Lundy*, 416 F. Supp. 2d 325, 335 (E.D. Pa. 2005) (citations omitted). The draft transcript of Defendant's December 2, 2015 videotaped statement, provided by the Government to support its claim that Defendant lied about the ammunition and broken safe, discusses only Defendant's explanations of the presence of the ammunition and broken safe. (ECF No. 54-2 at 15, 28, 41-42) (*e.g.*, in response to the safe "somebody threw that out in the garbage you see it's broken . . . [m]y brother took it up and he uses it to work out . . . cause we don't have any weights" and in response to the ammunition, "someone came running from 12th Ave and tossed it into my backyard . . . I found the bullets and I put it in my drawer"). It does not indicate how the ammunition and broken safe *actually* came to be in Defendant's backyard and basement, and does not provide any indication that Defendant was lying about his explanations. The fact that the Government believes these statements to be "simply incredulous" is not a sufficient substitute for the necessary factual support. *See* (ECF No. 70 at 19). As such, the Court "will not permit a line of questioning that has such potential for prejudice based on such inconclusive evidence." *Lundy*, 416 F. Supp. 2d at 335.

Conversely, the Court finds that Defendant's false statements about his lack of knowledge of his purported co-conspirator's involvement in other robberies are admissible under Rule 608(b). As the Government explains, Defendant "initially claimed that he did not have any information about [his purported co-conspirator's] involvement in other robberies . . . but then admitted that he was present when [his purported co-conspirator] discussed committing another home invasion robbery that, in fact, occurred later the same day[.]" (ECF No. 70 at 19-20). "Here, [Defendant's] prior false testimony and false statements are highly probative of his character for truthfulness." *Rashid*, 2011 WL 13196524, at *1 n.2. As such, "should he testify, it will be appropriate for the Government to cross-examine on these specific instances in order to attack [Defendant's] credibility." *See id.*

## 2. Evidence of Other Home Invasion Robberies

The Government reserves its right to introduce evidence of other home invasion robberies or communications about such robberies, as impeachment evidence in rebuttal if Defendant opens the door at any point during trial. (ECF No. 70 at 19, & n.11). Federal Rule of Evidence 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b) "does not, however, bar the use of such evidence for other purposes." *United States v. Gilmore*, 553 F.3d 266, 271 (3d Cir. 2009). One such "other purpose" is impeachment by contradiction. *See id.*

"Impeachment by contradiction is a means of policing the defendant's obligation to speak the truth in response to proper questions." *Id.* (internal quotation marks and citations omitted). "Accordingly, '[w]here a defendant testifies on direct examination regarding a specific fact, the prosecution may prove on cross-examination that the defendant lied as to that fact.'" *Id.* (citations

omitted). "Rule 607 of the Federal Rules of Evidence authorizes impeachment by contradiction, and Rule 403 governs its application." *Id.* As such, "the Government may impeach a defendant's testimony with contradictory evidence unless the 'probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* (citations omitted).

Should Defendant open the door by testifying that he never participated in the planning of any other robberies, the Government will be permitted to introduce evidence seized from Defendant's residence, as well as his videotaped statement and text messages, which directly impeach such testimony. Although the evidence seized from Defendant's residence, as well as his videotaped statement, may have the potential to cause unfair prejudice, the Court can limit such prejudice with a limiting instruction to the jury. Further, the Court reserves the right to determine before the Government introduces such evidence whether Defendant has opened the door to such cross-examination.

### E. Defendant's Efforts to Cooperate with Law Enforcement and Statements About Defendant's Telephone Line

#### 1. Defendant's Efforts to Cooperate with Law Enforcement

The Court finds that Defendant's efforts to cooperate with law enforcement are relevant under Federal Rule of Evidence 401. *See United States v. Urena*, No. 08-00553, 2009 WL 1024590, at *7-8 (E.D. Pa. Apr. 15, 2009) (citing *United States v. Levy*, 578 F.2d 896, 901 (2d Cir. 1978)) (finding that because defendant's efforts to cooperate with law enforcement were not made in the context of plea bargaining, the Court would "not preclude the introduction of these statements at trial"); *see also United States v. Cardena*, 842 F.3d 959, 992 (7th Cir. 2016) ("We agree with our sister circuits: an offer to cooperate to get oneself out of trouble is relevant evidence

tending to show consciousness of guilt."); *United States v. McCauley*, 715 F.3d 1119, 1126 (8th Cir. 2013); *United States v. Galloway*, 274 F. App'x 241, 248 (4th Cir. 2008); *Levy*, 578 F.2d at 901-02 ("No fault can be found with allowing in evidence [defendant's] volunteered desire to cooperate in the future, since it was evidence of his consciousness that he was in serious difficulty with the law and needed to do something to extricate himself. We glean nothing from [defendant's] various conversations that is fairly discernible as an offer of a bargain.").

"Relevance, however, is not the end of the inquiry because relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Cardena*, 842 F.3d at 992 (citing Fed. R. Evid. 403). Here, the Court finds that the probative value of general references to Defendant's efforts to cooperate with law enforcement are not substantially outweighed by the danger of unfair prejudice and they are relevant for the proper purpose of showing consciousness of guilt. Nonetheless, the Court finds that the probative value of specific references to statements made by Defendant involving weapons (*e.g.,* "I can get you some nice situations. I'm talking about weapons . . . I know people that got 'em."), guns (*e.g.,* responding to the question of "who has the other guns" with the answer "I don't know his name that's the problem but I know how to get access to them") and "jobs" (*e.g.,* "If you guys are working with me I will work with you and I will get you jobs. I'll get you guns.") are substantially outweighed by their prejudicial effect. *See* (ECF No. 54-2 at 23, 36, 40).

References to Defendant's statements about weapons, guns, and jobs might cause the jury to make a determination about Defendant based on an impermissible basis, such as their belief of his involvement in other criminal behavior generally or what they perceive as prior bad acts. The Court further finds that exclusion of such specific references will not unfairly disadvantage the Government because the proper purpose for admitting Defendant's statements is to show his desire

to cooperate, which can be demonstrated without specific highly prejudicial references. As such, although the Government may refer to Defendant's willingness to cooperate generally, the Government is barred from making any specific references to weapons, guns, or jobs during trial. The Court will also determine whether a limiting instruction is necessary at trial.

## 2. Statements About Defendant's Telephone Line

The Government recovered text messages from Defendant that the Government interpreted as Defendant informing an associate that his telephone line was not being intercepted by law enforcement. (ECF No. 70 at 21). The text messages are from November 13, 2015, two months after the home invasion. Defendant received a text message asking if "[t]extin bout it cool bro? I already got some updates for u." Defendant responded "[y]ea my line gucci." (ECF No. 70 at 21 & Ex. G at 1). The Government argues that such statements should be admissible because they are relevant to Defendant's consciousness of guilt due to a concern for law enforcement monitoring his phone line. *See id.* Defendant argues that the Government created an "unsubstantiated interpretation" of the text messages, and has not alleged a sufficient connection to the charged offense to make their consciousness of guilt argument compelling. *See* (ECF No. 72 at 16). So long as the Government properly introduces the evidence in question, the basis for the interpretation of the text messages, and the basis for the connection to the charged offense at trial, the Court finds that the text message statements about Defendant's telephone line are admissible. The evidence is relevant under Federal Rule of Evidence 401 to show Defendant's consciousness of guilt—that is—Defendant's understanding that the police may be following him. *See United States v. Abate*, 302 F. App'x 99, 102 (3d Cir. 2008) (finding that an audio recording of a conversation about an attempt to conceal a bribery scheme was relevant under the Federal Rules of Evidence as demonstrating consciousness of guilt); *United States v. Richardson*, 265 F. App'x

62, 66 (3d Cir. 2008) (finding that the introduction of a conversation between Defendant and Defendant's friend where Defendant discussed witness tampering as relevant of consciousness of guilt).

The Court also finds that the probative value of such evidence is not substantially outweighed by its prejudicial effect.

> In considering whether the . . . evidence is unfairly prejudicial, we consider these factors: (1) "the tendency of the particular conduct alleged to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"; (2) "the nature or style of the specific witness's narrative"; (3) "the likelihood that the testimony is true"; and (4) "the sufficiency of the other evidence presented to make a reasonable connection between the defendant and the offense charged."

*Richardson*, 265 F. App'x at 66 (citations omitted). In the present case, the evidence is neither graphic nor provocative. The evidence does not suggest an improper basis on which to determine Defendant's awareness of law enforcement tracking his communications. Defendant will have the opportunity at trial and on cross-examination to rebut the Government's testimony regarding the content of the text messages and the relationship to the charged offense. As such, the Court finds that the evidence is not unfairly prejudicial and may be admitted at trial.

### F. Defendant's Statement About the Firearm Recovered from His Bedroom

At a show-and-tell meeting at the United States Attorney's Office in Newark, in the presence of his then-court-appointed attorney, Defendant stated "[Y]eah, that's the gun" in response to two photographs obtained from Defendant's cell phone depicting him holding a silver gun. (ECF No. 70 at 21). Prior to Defendant's statement, the Assistant United States Attorney informed Defendant that the Government "believed the gun recovered from Thompson's apartment was the one in the photo." Thompson00320, Federal Bureau of Investigation 302 Report, dated Feb. 24, 2016. The Government seeks to admit Defendant's statement as direct evidence.

Here, the parties do not appear to contest that Defendant's statement is an opposing party's statement under Federal Rule of Evidence 801(d)(2) and therefore does not constitute hearsay. "To determine whether the statement should be admissible, however, the Court must still consider whether the probative value of the statement is substantially outweighed by the danger of unfair prejudice." *United States v. Brown*, No. 12-224, 2015 WL 2341188, at *3 (W.D. Pa. May 14, 2015), *aff'd*, 658 F. App'x 100 (3d Cir. 2016). On the one hand, Defendant's statement is highly probative inasmuch as it identifies the firearm found in Defendant's bedroom on the date of his arrest. On the other hand, the Court must perform a balancing test to determine whether the evidence is unfairly prejudicial.

> Rule 403 is not designed to exclude evidence that "is merely undesirable from the defendant's perspective." It is only intended to keep out evidence that is unfairly prejudicial. The term "'unfair prejudice' means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" In other words, evidence is unfairly prejudicial if it might lead the jury "into declaring guilt on a ground different from proof specific to the offense charged."

*Id.* Here, there is little risk that the admission of Defendant's statement would be unfairly prejudicial. Rather, Defendant's statement, which identifies the firearm found in Defendant's bedroom on the date of his arrest, speaks directly to elements of the specific charged offense. As such, Defendant's statement about the firearm is admissible.

### G. Defendant's Statements About Retrieving the Gun and Photographs of Defendant Possessing Firearms and Police Badges

The Government seeks to admit the following items from Defendant's cell phone as direct evidence: (1) a text message from Defendant the day after the home invasion stating that he was retrieving his gun in Newark, (2) a photo of two police badges, (3) a photo of Defendant wearing a blue shirt and an additional photo of an individual in a blue shirt with a black handgun in his lap, and (4) photos of Defendant holding a silver handgun to his head and pointed at the camera. (ECF No. 70 at 22-24 & Exs. D-G). For the reasons stated below, items 1-3 listed above are admissible

and item 4 listed above is inadmissible.

The Court finds that the text message, the photo of police badges, and the photos of Defendant in a blue shirt and a black handgun (items 1-3) are admissible. *See* (ECF No. 70 at Exs. E-G). The text message from Defendant's phone is from approximately thirty-six hours after the attempted robbery where Defendant wrote he was "shooting to Newark to pick up my gun I left the other day." (ECF No. 70 at 23 & Ex. G). The Court finds that the text message evidence the Government seeks to introduce is highly relevant because the text message makes it more likely that Defendant used a gun during the commission of the attempted robbery and was seeking to retrieve that gun. Further, the court also finds that the probative value of such evidence is not substantially outweighed by its prejudicial effect. *See Brown*, 2015 WL 2341188, at *3. Like Defendant's statement about the firearm recovered from Defendant's bedroom, there is little risk that the statement would "suggest decision on an improper basis," and the jury will already be hearing evidence that Defendant brandished a gun during the commission of the attempted robbery, which is an element of Count Three of the indictment. *See Richardson*, 265 F. App'x at 66.

The photo of police badges and the photos related to the black handgun Defendant purportedly used during the home invasion speak directly to the elements of the charged offenses for Counts One, Two, and Three, and are therefore both highly probative and relevant. The photo of the police badges will corroborate witness testimony, surveillance video, and Defendant's statements regarding the fact that two individuals committed the robbery by impersonating law enforcement. The Government will present the photos related to the black handgun to show that Defendant was in possession of a black handgun approximately three months after the home invasion, making it more likely that Defendant had access to and therefore possessed and

brandished a black handgun during the home invasion. Such evidence is probative of Defendant's possession of the black handgun.

The badges photo is not particularly prejudicial and the probative value of the photos related to the black firearm is not substantially outweighed by any prejudicial effect. As an element of Count Three requires proving that Defendant brandished a gun, evidence of possession of a gun is necessary and there is nothing in the photo other than the gun itself to suggest a decision on an improper basis such that the prejudicial impact would substantially outweigh the probative value. As such, Rules 401 and 403 do not bar the admissibility of the statements and photographs.

However, the inquiry does not stop there. Federal Rule of Evidence 611(a) states that "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time." Fed. R. Evid. 611(a)(2). Accordingly, the Court may exclude what it deems to be "cumulative evidence." *See Unites States v. Faines*, 216 F. App'x 227, 231 n.6 (3d Cir. 2007). Here, Defendant argues that the statements and photos are "cumulative" because the Government "also has surveillance video and [Defendant's] statements regarding the badges" and "the jury will have already heard testimony from the witnesses regarding the gun." (ECF No. 72 at 17 (Referencing ECF No. 55 at 4)). Nonetheless, the Court does not find that the introduction of such evidence would cause "undue delay, wasting time, or needlessly presenting cumulative evidence" given the type and amount of the other evidence presented. *See* Fed. R. Evid. 403. Such evidence will allow "the trier of fact [to] hear[] all facts necessary to form an educated decision." *Planned Parenthood of Cent. N.J. v. Verniero*, 22 F. Supp. 2d 331, 339 (D.N.J. 1998). As such, this evidence is admissible.

Conversely, the photos of Defendant holding a silver handgun to his head and pointed at the camera (item 4) are inadmissible. *See* (ECF No. 70 at Ex. D). The Government seeks to

introduce these photos to "prove an element of the offense charged in Count Four of the indictment—that [Defendant] knowingly possessed a firearm as a convicted felon." (ECF No. 70 at 24). The photos, taken just shy of two months prior to the search of Defendant's residence, depict Defendant making faces and gestures with the handgun that could elicit a decision on an improper basis, namely an emotional one. In the photos, Defendant appears to be handling the firearm in a reckless or intimidating manner. The handgun in the photos is silver, like the one found at Defendant's home, although the serial number of the handgun is not visible on any of the photos.

While the photos may be relevant, the Court finds that they are highly prejudicial and the prejudicial effect outweighs their probative value. Furthermore, the Government already has much more direct evidence in support of Defendant's knowing possession of a firearm as a convicted felon, and this evidence would also be needlessly cumulative. The strength of the Government's evidence regarding the silver handgun found in Defendant's home is in contrast to the limited evidence concerning the black handgun allegedly used in the robbery. As to the silver gun, the Government has evidence of (1) the silver handgun recovered from Defendant's bedroom, (2) Defendant's recorded post-arrest statement where he informed officers that he was holding onto the gun for a "friend of mine" and that he "put it on top of the wardrobe," and (3) Defendant's statement at the show-and-tell in response to pictures of the gun recovered from his bedroom stating "[y]ea that's the gun." Therefore, in addition to their highly prejudicial effect, the photos of the silver handgun should be excluded as needlessly cumulative in light of this other evidence. For the reasons stated, the Government's motion to admit the photos of Defendant with the silver handgun is denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's omnibus motion is granted in part and denied in part and the Government's motions *in limine* are granted in part and denied in part.


DATED: January 4, 2019

_____

**CLAIRE C. CECCHI, U.S.D.J.**